2005-26369
FILED
November 18, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0003043403

**11**

1  J. RUSSELL CUNNINGHAM, State Bar #130578
**ERIC R. GASSMAN, State Bar #260693**
**DESMOND, NOLAN, LIVAICH & CUNNINGHAM**
2  1830 15th Street
Sacramento, California 95811
3  Telephone: (916) 443-2051
Facsimile: (916) 443-2651
4

Attorneys for Chapter 7 Trustee
5  Richard J. Hanf

6

7                    **UNITED STATES BANKRUPTCY COURT**

8                     **EASTERN DISTRICT OF CALIFORNIA**

9                          **SACRAMENTO DIVISION**

10

11  In re:                                    Case No. 05-26369-C-7
                                              Chapter 7
12

13  WESTERN AUTO POOL &
    TRANSPORTING, INC.,                       DCN: DNL-9
14
                Debtor.
15
                                              Date:  October 26, 2010
16                                            Time:  9:30 a.m.
                                              Place: Courtroom 35, Dept. C
17                                                   501 I Street, 6th Floor
                                                     Sacramento, CA 95814
18

19          **FINDINGS OF FACT AND CONCLUSIONS OF LAW RE:**
                **MOTION TO DISALLOW PROOF OF CLAIM #54**
20          **(California State Board of Equalization, $8,910.96 Priority)**

21          The motion of Richard J. Hanf ("Trustee") to disallow the State of California's ("State")

22  Proof of Claim #54, filed by and through the California State Board of Equalization ("SBE") on

23  September 29, 2005, came on for continued hearing on October 26, 2010. The State appeared by

24  and through the SBE's staff counsel Dana Flanagan-McBeth. J. Russell Cunningham of

25  Desmond, Nolan, Livaich & Cunningham appeared for Trustee. All other appearances were as

26  noted on the record.

27          Having given due consideration to the motion, the declarations and other evidence

28  submitted in support of the motion, any opposition filed, the record and proceedings in the

Desmond,
Nolan, Livaich &
Cunningham
1830 15th Street
Sacramento, CA
95811
(916) 443-2051

1

RECEIVED
November 01, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003043403

above-captioned case, any stipulations cited in open court, the arguments of counsel and other interested parties at the hearing, and for other good cause shown, the court hereby finds, as a matter of fact, and concludes, as a matter of law, as provided under Federal Rules of Bankruptcy Procedure 7052 and 9014, in addition to any findings and conclusions stated orally on the record, as follows:

      1.      This case was commenced by the filing of a voluntary chapter 7 petition on May 25, 2005. Trustee is the duly appointed trustee. [Docket #202, 2:5-6]

      2.      On September 29, 2005, the State, by and through the SBE, filed Proof of Claim #54, asserting $8,910.96 priority for unpaid sales tax. [Docket #202, 2:7-8]

      3.      On the petition date, the debtor's property included the right to recover from the California State Controller ("Controller") $5,787.00 unclaimed funds, a legal or equitable interest that is property of the estate. 11 U.S.C. Section 541(a)(1).

      4.      On April 1, 2009, Trustee checked the Controller's Unclaimed Property website and discovered that the State was holding thirteen (13) separate properties belonging to the debtor, totaling $9,007.75. During the period April 3 through April 9, 2009, Trustee submitted claims to the Controller for these funds. [Docket #202, 2:11-16]

      5.      In a letter dated May 4, 2010, Justin W. Dersch, staff counsel for the Controller's Office, advised that four of Trustee's claims for funds that had escheated pre-petition, had been denied because the statute restricts release to the person who owned the property at time of escheat. California Code of Civil Procedure Section 1540(d). The explanation offered was that the State Controller did not consider Trustee to be the owner of the funds at time of the pre-petition escheat because Trustee was appointed post-petition. Attorney Dersch did advise, however, that two of Trustee's other claims had been approved because they were for funds that had escheated post-petition. [Docket #202, 2:19-3:3]

      6.      On May 26, 2010, the Controller acknowledged that the right to seek return of $5,787.00 unclaimed funds belonged to the debtor on the petition date, but denied the claim, stating that "such property would not be belonging or owing to such person or entity (debtor) until such claim is filed, verified and approved;" and "a trustee acts on behalf of the bankruptcy

2

estate, not the debtor...only the former owner can claim the property."[1]  Other than a general

reference to 11 U.S.C. Section 541, no supporting federal authority was cited. [Docket #202, 3:4-14]

7.    The unclaimed $5,787.00 is property that Trustee may use, sell or lease, and is not of inconsequential value or benefit to the estate, and therefore should be accounted for and delivered to Trustee.  11 U.S.C. Section 542(a).

8.    The SBE and the Controller are subdivisions of the same entity, to wit the State. [Docket #202, 3:19-22; Docket #214, 1:28-2:2]

9.    The SBE and the Controller are both part of the executive branch of the California State Government. [Docket #214, 2:3-5]. Docket #214, 2:6-9]

10.    The Controller, John Chiang, is also one of 5 members of the SBE, one of the directors of the Franchise Tax Board and sits on the board of over 75 other state agencies. [Docket #202, 3:23-25]

11.    SBE is an agency of the State, created in 1879 by constitutional amendment, and according to SBE's website, is responsible for collecting taxes and fees that provide approximately 35 percent of the annual revenue for the State government; and essential funding for counties, cities and special districts.  The SBE administers the State's sales and use, fuel, alcohol, tobacco, and other taxes and collects fees that fund specific programs of the State.  In addition to administering key revenue programs, the SBE plays a significant role in State property tax assessment and administration; and acts as the appellate body for the corporate franchise and personal income tax appeals. [Docket #202, 2:8-10, Docket #214, 2:10-18]

12.    According to the Controller's official website, he is the Chief Financial Officer of the State, and through the Controller's Office, is charged with accounting for and controlling disbursement of state funds  and serves on 78 state boards and commissions, including the SBE.

---

[1]The denial of Trustee's claim conflicts with the mission of the State's own Unclaimed Property Program which is to, "(a) reunite lost and abandoned property with their rightful owners and to (b) safeguard these properties from being used by private interests for personal gain." [Docket #215, 18]

The Controller is the State's independent fiscal watchdog, providing fiscal control over more than $100 billion in receipts and disbursements of public funds a year, offering fiscal guidance to local governments and uncovering fraud and abuse of taxpayer dollars.  The Controller is responsible for: (a) accounting for and controlling disbursement of all State funds, of which the SBE provides approximately 35 percent of such funds; (b) determining legality and accuracy of every claim against the State; (c) issuing warrants in payment of the State's bills including lottery prizes; (d) administering the Uniform State Payroll System; (e) auditing and processing all personnel and payroll transactions for state civil service; exempt employees; state university and college system employees; (f) auditing various state and local government programs; (g) informing the public of the State's financial condition; (h) administering the Unclaimed Property Law; (i) informing the public of financial transactions of city, county and district governments; and (j) administering Property Tax Postponement Program. [Docket #214, 2:19-3:7]

13.    On June 9, 2010, Trustee filed a motion seeking disallowance of the State's Proof of Claim #54 pursuant to 11 U.S.C. Section 502(d). [Docket #200-204]

14.    The State's opposing papers were filed on July 21, 2010. [Docket #205-207]

15.    On August 3, 2010, the matter was continued and a briefing schedule set.  [Docket #210]

16.    On September 20, 2010, Trustee's supplemental moving papers were filed. [Docket #213-216]

17.    On October 12, 2010, the State's supplemental opposing papers were filed. [Docket #217-219]

18.    On October 19, 2010, Trustee's reply papers were filed. [Docket #220-221]

19.    Trustee's motion, which consists of an objection to Proof of Claim #54,  is a contested matter over which this court has subject matter jurisdiction.  28 U.S.C. Section 1334(b) and (e), and 11 U.S.C. Section 502(d).  It is a core proceeding.  28 U.S.C. Section 157(b)(2)(A) and (B).

20.    The estate's right to affirmatively recover under Bankruptcy Code Section 542(a), the $5,787.00 unclaimed funds held by the State, by and through the Controller, would require an

4

1    adversary proceeding.  Bankruptcy Rule 7001(1).  A claim objection, however, is not one of the

2    proceedings identified by the Federal Rules of Bankruptcy Procedure as an adversary proceeding.

3    Bankruptcy Rule 7001.

4        21.     Determination of the amount of a claim subject to objection requires notice and a

5    hearing.  Bankruptcy Code Section 502(a).  However, a claim should be disallowed if, as in this

6    case, the claimant is an entity from which property is recoverable under Bankruptcy Code

7    Section 542(a).  Bankruptcy Code Section 502(d).

8        22.     When a claim objection includes a demand for relief of a kind specified in

9    Bankruptcy Rule 7001, the objection must be made by adversary proceeding.  Bankruptcy Rule

10   3007(b).  Trustee's right to defend against the $8,910.96 priority claim asserted by the State

11   (through the SBE) does not require an adversary proceeding because the objection does not

12   include a demand for affirmative relief against the State (through the Controller).

13       23.     The State cites no authority to support its contention that the award of affirmative

14   relief under Bankruptcy Code Section 542(a) is a condition precedent to claim disallowance

15   under Bankruptcy Code Section 502(d).  Since the statute employs the words "property is

16   recoverable," not "property ordered delivered," Congress' intent is obvious.  Indeed, even if

17   Trustee's claim for affirmative relief were time-barred, the State's claim would be disallowed

18   under Bankruptcy Code Section 502(d).  *In re America West Airlines, Inc.*, 217 F.3d 1161 (9th

19   Cir. 2000) (lien avoidance under Bankruptcy Code Section 545); *Committee of Unsecured*

20   *Creditors v. Commodity Credit Corp. ( In re KF Dairies, Inc.)*, 143 B.R. 734, 737 (9th Cir. BAP

21   1992) (post-petition transfer avoidance under Bankruptcy Code Section 549).  See also, *In re*

22   *Cushman Bakery*, 526 F.2d 23 (1st Cir. 1975) (pre-petition transfer avoidance under the

23   Bankruptcy Act and the Statute of Elizabeth).

24       24.     The State correctly notes that adversary proceedings were filed in connection with

25   the cases cited by Trustee as applying the "unitary creditor theory" to agencies of the United

26   States and the State of Oregon.  *Doe v. United States*, 58 F.3d 494, 495-6 (9th Cir. 1995) (Federal

27   Bureau of Investigation and Internal Revenue Service);  *In re Moore*, 323 B.R. 752, 753-54

28   (Bankr. D. Or. 2005) aff'd, CIV. 05-6226-AA, (D. Or. Sept. 30, 2005) (Oregon State Lottery

Commission and Oregon Department of Revenue).  However, unlike Trustee who seeks only disallowance of the State's claim, the debtor in *Doe v. United States* and the *In re Moore* trustee sought both affirmative relief against and disallowance of the claims of the United States and State of Oregon.  The State has made no effort to explain how or why the holdings in those cases require Trustee to initiate an adversary proceeding.

25.    An objection to the allowance of a claim must be in writing, filed, and noticed by mail or delivery at least 30 days before hearing.  Bankruptcy Rule 3007(a).

26.    The notice of motion complied in all respects with the requirements of the Bankruptcy Code and Bankruptcy Rules, and it fully and adequately described the relief required in the objection and informed parties in interest how to receive all supporting documentation for the objection.  Under the circumstances of this case, the notice of the objection provided fair and reasonable notice of the objection, the hearing on the objection, and the deadline and procedures for opposing the objection.

27.    The objection and the notice of hearing on the objection, as well as notice of the deadline for a response to the objection, were duly served on all required and necessary parties, including the debtor, the State, by and through the SBE, and their respective attorneys, if any, and the Office of the United States Trustee.  Notice and service was in accordance with Bankruptcy Rule 4003.

28.    The court sustains the objection of Trustee, and disallows the State's Proof of Claim #54, as follows.

29.    The sales tax claim of the State, the same entity from which Trustee is entitled to obtain turnover of the unclaimed property claim, must be disallowed.  11 U.S.C. Section 502(d) states in pertinent part, that:

> " . . . the court shall disallow any claim from any entity from which property is recoverable under section 542, 543, 550, 553 . . . unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(I), 542,543, 550, 553." 11 U.S.C. Section 502(d).

1      30.     The Bankruptcy Code defines an *entity* to include, "person, estate, trust,

2   governmental unit, and United States Trustee." 11 U.S.C Section 101(15).  A *governmental unit*

3   is further defined as the:

4           " United States; State; Commonwealth; District; Territory; municipality; foreign state;
            department; agency; or instrumentality of the United States (but not a United States
5           trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a
            District, a Territory, a municipality, or a foreign state; or other foreign or domestic
6           government." 11 U.S.C. Section 101(27).

7      31.     But for the Controller's denial of Trustee's application for return of the escheated

8   funds, the State's claim would otherwise be allowable against the estate.  The issue presented,

9   however, is whether the Controller and the SBE, are arms of the same "governmental unit" for

10  purposes of 11 U.S.C  Section 502(d).  For the State to deny that agencies of the State constitute

11  a single governmental unit flies in the face of established case law, the principals of fair play and

12  reciprocity and further serves to undermine the effective and efficient claims administration

13  process under the Bankruptcy Code.

14     32.     The Ninth Circuit case, *Doe v. United States*, 58 F.3d 494, 495-6 (9th Cir. 1995),

15  provides foundational support for holding the Controller and the SBE to be a single

16  governmental unit, i.e. the State.  In *Doe*, the plaintiff filed a complaint against the Federal

17  Bureau of Investigations ("FBI") under the Federal Tort Claims Act and the Contract Disputes

18  Act seeking damages allegedly incurred when the FBI failed to uphold an agreement whereby

19  Doe was to act as an informant in connection with a drug trafficking investigation. The FBI

20  failed to maintain the anonymity of Doe, and Doe brought his action in the United States District

21  Court.  Meanwhile, Doe had entered bankruptcy.  The Internal Revenue Service ("IRS") filed

22  proofs of claim against Doe's bankruptcy estate for back taxes.  Doe filed an adversary

23  proceeding seeking setoff of Doe's FBI damage claim against the IRS tax claim.

24     33.     The Ninth Circuit was faced with the same question presented by Trustee's

25  objection, vis-a-vis the federal government.  In *Doe*, the court had to determine whether the

26  United States as a whole is a *governmental unit* for purposes of sovereign immunity and setoff or

27  whether each agency of the United States must be taken separately, so that a debt of the FBI

28  could not be setoff against the claim by the IRS.  Commendably, the United States conceded that

1    "governmental unit" refers to the United States as a whole and not to particular agencies.  The

2    court found that:

> "the United States reaches this position out of a commendable sense of fairness and
> reciprocity because it often seeks to be treated as a single unitary creditor under the offset
> provisions of 11 U.S.C.§ 553. The United States has been successful in asserting such a
> position as a creditor. See e.g., *Luther v. United States*, 225 F.2d 495, 498 (10th
> Cir.1954). It is also treated as a single creditor when it asserts priority for its debt. See
> e.g., *Small Business Administration v. McClellan*, 364 U.S. 446, 450, (1960)." *Doe at p.
> 498.*

7    34.    The court held as a matter of law that for both purposes all agencies of the United

8    States, except those acting in some distinctive private capacity, are a single governmental unit.

9    *Id.*

10    35.    The Ninth Circuit's adoption of the "unitary creditor theory" was applied to the

11    question of whether state agencies are single governmental unit in *In re Moore*, 323 B.R. 752,

12    753-54 (Bankr. D. Or. 2005) aff'd, CIV. 05-6226-AA, (D. Or. Sept. 30, 2005).  That matter came

13    before the court on defendant Oregon State Lottery Commission's ("Lottery") motion to dismiss

14    an adversary proceeding, and the Chapter 7 trustee's objection to the Oregon Department of

15    Revenue's ("ODR") proof of claim in the parent bankruptcy case.  The trustee commenced that

16    adversary proceeding to avoid a preferential transfer to Lottery in the amount of $10,000.00.

17    Lottery made a special appearance, seeking dismissal for lack of jurisdiction, based on Eleventh

18    Amendment immunity.  In the parent bankruptcy case, ODR filed Proof of Claim No. 1 for

19    $15,026.26, $14,988.00 of which was claimed as priority, for outstanding 1999 personal income

20    taxes, interest and penalties thereon.  The trustee objected, claiming Lottery was liable in the

21    preference action, asserting 11 U.S.C. Section 502(d) and setoff (through 11 U.S.C. Section

22    106(c)) as defenses.  ODR asserted immunity as to the defenses, arguing 11 U.S.C. Sections

23    106(c), and 502(d) are unconstitutional, as applied in this context.  The matters were

24    consolidated, the court holding that the avoidable transfer to Lottery provided an affirmative

25    defense for the trustee to ODR's claim and the trustee could offset the estate's debt to ODR for

26    unpaid taxes to the extent of the avoidable transfer.  *In re Moore*, 323 B.R. 752, 753-54 (Bankr.

27    D. Or. 2005) aff'd, CIV. 05-6226-AA, (D. Or. Sept. 30, 2005).  The court noted that Lottery and

28

8

1  ODR did not defend on the basis that they are different creditors or governmental units, citing

2  *Doe v. U.S.*, 58 F.3d 494. *In re Moore*, at 758.

3       36.    Contrary to the "commendable sense of fairness and reciprocity" of the United

4  States and State of Oregon, here the State contends that SBE and the Controller are two separate

5  agencies.  What is particularly baffling about that contention is that SBE and the Controller are

6  truly two sides of the same coin.  The Controller and the SBE are two of the most interconnected

7  arms of the State.  The Controller serves as one of only five members of the SBE.   The SBE is a

8  principal vehicle for generating over one third of the State's revenue, responsible for collecting

9  revenues for the State by way of sales and use, fuel, alcohol, tobacco, and other taxes and fees

10  from cities, counties and special districts.  The Controller is charged with accounting for and

11  controlling disbursement of such funds collected by the SBE and oversees and provides guidance

12  to the very same entities for which the SBE collects taxes and fees.  The Controller is responsible

13  for auditing various state and local government programs and informing the public of financial

14  transactions of city, county and district governments.  In addition to administering key revenue

15  programs, the SBE plays a significant role in California property tax assessment and

16  administration; and the Controller administers the Property Tax Postponement Program.

17       37.    In a prior case before this court, *In re Commercial Reprographics, Inc.*, 95 B.R.

18  174, 178-79 (Bankr. E.D. Cal. 1988), the State itself had no reservation about offsetting from one

19  agency to pay a claim of another:

20         "The State relies on a California statute that permits the State Controller, in his discretion,
       to offset any amount due to a state agency from any amount owing by any state agency to

21         the same person or entity. . . .   State statutes have been upheld in analogous circumstances
       in bankruptcy. See *In re Farmer's Markets, Inc.*, 792 F.2d 1400, 1402-04 (9th Cir.1986)

22         (enforcing California statute conditioning bankrupt's estate's sale of liquor license upon
       payment of back taxes)."

23
     38.    The California Interagency Intercept Program ("Intercept Program"), is a program

24  administered by the Franchise Tax Board ("FTB") and the Controller, to intercept FTB refunds

25  and California State Lottery winnings to pay the taxpayer's or winner's debts to participating

26  State agencies and colleges.

27

28

39.     Through the Intercept Program, the State fosters an efficient and effective means of collecting monies owed to a variety of other state and local agencies and special districts.  The State has instituted an entire program to promote and encourage collection methods done "at a fraction of the time and less expensive" than other means and uses taxpayer money to fund such program.  The State seeks to deny the very same taxpayers a sense of "fairness and reciprocity."  Incredibly, and despite operating a program of its own to offset funds due an individual from one agency to pay debts owed to another agency, the State seeks to avoid a taste of its own medicine.[2]

40.     The relief sought by Trustee does not violate the State's sovereign immunity because Trustee asserts no affirmative claim,  but instead suspension of distribution of the State's Proof of Claim #54, until such time as the State returns the escheated funds.  Moreover, by filing a proof of claim, the State has waived immunity which it otherwise may have had,  respecting the adjudication of the claim.  *Gardner v. State of New Jersey*, 329 U.S. at 573-574 (1947); and relied on by the Ninth Circuit in *California Franchise Tx Board v. Jackson, (In re Jackson)*, 184 F. 3d 1046 (9th Cir 1999).

> "In,  *In re Moore*, the Trustee raised the issue of waiver in the context of a set off.   The argument is that by filing a proof of claim, a state waives immunity as to any claim a trustee has (regardless of whether it arises from the same transaction) but such claim may only be used to setoff against the state's claim up to the amount of that claim, (i.e. no positive recovery is permitted). The majority rule appears to uphold this limited waiver. *Ossen v. Dept. of Social Services (In re Charter Oak Associates)*, 361 F.3d 760 (2nd Cir.2004);  *Zayler v. Dept. of Agriculture (In re Supreme Beef Processors, Inc.)*, 391 F.3d 629 (5th Cir.2004); *In re Microage Corp.*, 288 B.R. 842 (Bankr.D.Ariz.2003)." . *In re Moore*, 323 B.R. at 759.

41.     Trustee's objection to the claim of the State, filed by and through the SBE, under Section 502(d) is an efficient and cost effective means of administering the claims of the estate.  Section 502(d) is an affirmative defense to a claim.  *El Paso City of Texas v. America West Airlines, Inc., (In re America West Airlines Inc.)*, 217 F.3d 1161 (9th Cir.2000); *Parker North American Corp. v. Resolution Trust Corp. (In re Parker North American Corp.)*, 24 F.3d 1145 (9th.1994).  It is part of the claims process, which is an "in rem" proceeding that does not

---

[2]As stated in the Intercept Program participation booklet, "We often collect funds that are otherwise unobtainable, and we can do so in a fraction of the time and at less expense than other collection programs." [Docket #214, 3:8-14]

1    offend a state's sovereignty. *Official Committee of Unsecured Creditors v. PUC of California (In*

2    *re 360networks (USA) Inc.)*, 316 B.R. 797 (Bankr.S.D.N.Y.2004).

3        42.    By seeking instant defensive relief, Trustee avoids the time and costs of bringing

4    an action against the State for turnover of the unclaimed property.  In short, Section 502(d)

5    protects the estate from the unfair result of paying a claim when the cost of otherwise seeking the

6    affirmative relief would exceed the likely recovery.

7        43.    A separate order will be entered pursuant to the provisions of 11 U.S.C. Section

8    502(d), that distribution on account of the State's Proof of Claim #54, filed by and through the

9    SBE, and otherwise allowable as a priority in the amount of $8,910.96, shall be suspended until

10    such time as Trustee receives the $5,787.00 unclaimed funds, recoverable from the State, and

11    held by the Controller,  pursuant to 11 U.S.C. Section 542(a).

13    Dated: November 18, 2010

    By the Court

    David E. Russell, Judge
    United States Bankruptcy Court

16    APPROVED AS TO FORM:

17    STATE OF CALIFORNIA

18    By: _____
19        Dana Flanagan-McBeth, Staff Counsel
    California State Board of Equalization

11